IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

TOLTEST, INC.,

                         Plaintiff,                  Case No. 3:03 CV 7315

        -vs-

                                          <u>MEMORANDUM   OPINION</u>

KAREN NELSON-DELK,

                         Defendant.

KATZ, J.

This matter is before the Court on Ms. Delk's motion for reconsideration (Doc. 123) on this Court's previous ruling (Doc. 120-121) on TolTest's motion for summary judgment (Doc. 89) seeking dismissal of the counterclaims asserted by defendant Karen Nelson-Delk in her first amended counter-complaint (Doc. 48).[1]

I.     **Background**

TolTest is an Ohio Corporation with its principal place of business in Toledo, Ohio.  Ms. Delk is a Michigan resident who owns a home in Marshall, Michigan.  Delk's Marshall residence

---

[1] The Court had previously issued a ruling on this motion, *see* Doc. 120 and 121, but herein issues an amended opinion in light of claims and supporting facts as raised in Defendant's motion for reconsideration, Doc. 123, and supported by the amended counter-complaint, Doc. 48, some of which differed notably from those raised in other pleadings.  This memorandum and the accompanying judgment entry amend and effectively replace those at Doc. 120 and 121, respectively.

    A motion for reconsideration is often treated as a motion made under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991); *Shivers v. Grubbs*, 747 F. Supp. 434 (S.D. Ohio 1990).  The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have a court reconsider matters "properly encompassed in a decision on the merits."  *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988).  This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment."  *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982).

was damaged by water and resulting mold caused by heavy snowfall in December of 2000 and January of 2001.  Ms. Delk's insurance company, State Farm, sent an environmental contractor, Enviroair, to inspect the home and assess remedial options.  State Farm then selected TolTest as the remediation contractor for the necessary repairs.  Renovations to be performed on Ms. Delk's home encompassed replacement of various building materials that were contaminated with mold, including portions of the roof, insulation, flooring, wallboard, windows, and light fixtures.

On October 9, 2002, TolTest and Ms. Delk entered into a written agreement, later modified by five written Change Orders (collectively, "Agreement"), whereby TolTest would provide services to return Ms. Delk's home to a livable condition.  According to TolTest,

> The services included the decontamination of certain of Ms Delk's household goods, the storage thereof after decontamination, mold remediation in her residence, and renovations made necessary by TolTest's remediation activity. TolTest intended to perform all remediation services.  The renovations were to be performed by a licensed residential contractor retained by TolTest.

Doc. 89 at 1 (citing Lint Affidavit).  The total amount to be paid under the Agreement was $207,215.00.  Agreement at 5.  Four payments of $51,803.75 each were to be made in the following manner:

> A downpayment of $51,803.75 will be required prior to the commencement of work.  Three (3) additional consecutive payments of $51,803.75 each will be made every 30 calendar days thereafter.  Retainage in the amount of $5,180.00 may be withheld from the final payment until any and all tasks are complete including punch list items.

Agreement at 5.  The parties also agreed (in writing) to five Change Orders that modified the scope of the original Agreement and added additional project costs of $59,641.00.  Doc. 1 at 2.

The parties do not dispute that Ms. Delk made two of the four payments required under the Agreement.  She fully paid the initial down payment amount of $51,803.75 in October of 2002

2

and the second monthly payment of an equal amount in November, 2002.  In addition, she paid

$14,098.25 to TolTest in March of 2003.  Ms. Delk alleges that she did not continue to make

payments on the contract because TolTest was committing an ongoing material breach of the

Agreement.  TolTest counters that it substantially performed its obligations under the contract,

which meant that Ms. Delk's failure to make scheduled payments was the first material breach of

the Agreement.  In March of 2003, TolTest suspended its performance under the Agreement.

TolTest alleges that it has completed all remediation work required under the Agreement,

but that some of the renovations that would have followed the remediation were not performed

due to suspension of its performance.  Doc. 89 at 9.  Thus, they allege the amount due and owing

is $103,150.18.  *Id.*  TolTest has filed for summary judgment on all of Ms. Delk's counter-claims,

as well as on its own claims for breach of contract, unjust enrichment, and quantum meruit.  *Id.* at

1.

## II.     Standard of Review

### A.     Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial responsibility of "informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating

3

the absence of evidence supporting one or more essential elements of the non-movant's claim.  *Id.* at 323-25.  Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).  However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.  The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch*

4

*Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999).  Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### B.     Choice of Law

After the United States Supreme Court's ruling in *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (U.S. 1941) (superseded on other grounds), choice of law in diversity cases in federal courts must be determined by the choice of law principles of the state in which the federal court sits.  *Id.* at 496-97.  In *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286 (Ohio 1984), the Supreme Court of Ohio adopted the Restatement (Second) of Conflict of Laws as the new standard for choice of law in Ohio courts.  *Id.* at 289.  These principals will govern the choice of law in this diversity case.

### III.    Discussion

In her first amended counter-complaint (Doc. 48), Delk states ten distinct claims for relief.  TolTest alleges in its motion that it is entitled to summary judgment on all claims.  In addition, it asserts that it is entitled to summary judgment on its claims against Delk for breach of contract, unjust enrichment, and quantum meruit for the mold remediation work it performed on her home.

The claims in Delk's counter complaint are: (1) breach of express and implied contract; (2) negligence; (3) and (4) violation of the consumer protection laws of Ohio and Michigan; (5) punitive damages; (6) fraud; (7) silent fraud; (8) making a nuisance of her property; (9) civil conspiracy; and (10) intentional interference with contract and advantageous relationship.  A

5

preliminary issue is whether TolTest performed unlicensed work on Delk's Marshall residence that required a license from the State of Michigan.

### A.    TolTest's Lack of a Michigan License

As a threshold matter, Ms. Delk asserts that TolTest cannot maintain a cause of action against her for work it performed on her home because it did not obtain a license required under the Michigan Occupation Code.  In Michigan, an entity that engages in the construction, repair, or alteration of a residential structure must be licensed.  MCL § 339.2401.  An unlicensed residential builder in Michigan cannot maintain an action to collect compensation for work that it performs on a residence.  *Charles Featherly Constr. Co. v. Property Development Group, Inc.*, 253 N.W.2d 643, 644 (Mich. 1977).  A contract by an unlicensed entity to perform services which require a residential builder's license is not merely voidable by the consumer; the Supreme Court of Michigan has held that such contracts are void *ab initio*.  *Stokes v. Millen Roofing Co.*, 649 N.W.2d 371, 378 (Mich. 2002) (citing *Bilt-More Homes, Inc., v. French*, 130 N.W.2d 907 (Mich 1964)); *see also Brummel v. Whelpley*, 46 Mich. App. 93, 96 (Mich. Ct. App. 1973).  Thus, assuming *arguendo* that TolTest was required to have a license to perform the contracted work, neither TolTest nor Ms. Delk would be able to maintain a cause of action in contract before this Court.

Under the Michigan's Residential Builder's Act, all contractors offering to do work which totals $600 or more in labor and materials must be licensed by the state of Michigan.  MCL § 339.2403(f); MCL § 339.601(1).  A person must obtain a residential builder's license if he or she is "engaged in the construction of residential structure," and for compensation undertaken with another "for the erection, construction, replacement, repair, alteration, or an addition to,

6

subtraction from, improvement, wrecking of, or demolition of, a residential structure." MCL § 339.2401(a).  Similarly, one must be licensed as a residential maintenance and alteration contractor if he or she, for compensation, "undertakes with another for the repair, alteration, or an addition to, subtraction from, improvement of, wrecking of, or demolition of a residential structure." MCL § 339.2401(b); MCL § 339.2412(1).  Ms. Delk asserts TolTest would have to have been licensed either as a residential builder or as a residential maintenance and alteration contractor during her remediation project in order to bring this action for compensation.

The parties here do not dispute that TolTest lacks state licensure that would satisfy the Michigan Occupation Code.  The question before the Court is whether the compensation sought by TolTest stems from "the performance of an act or contract for which a license is required." MCL 339.2412(1).  Ms. Delk argues (1) that by removing contaminated building materials from her home, TolTest engaged in the act of "demolition" or "wrecking" within the meaning of MCL 339.2401(b), and (2) that TolTest contracted to do rebuild work on her property that it was not licensed to do.

In Ms. Delk's brief in opposition to TolTest's motion for summary judgment, the words "subtraction from," "wrecking of," and "demolition of a residential structure" appear to be bolded and emphasized over "erection, construction, replacement, repair, alteration, or an addition to [or] improvement." Doc. 95 at 14 (Br. at 10).  Delk does not lay out an argument that TolTest performed any of the un-highlighted activities, but rather alleges chiefly that TolTest was "not licensed to do demolition." *Id*.

TolTest's remediation work did not amount to "demolition" or "wrecking."  Ms. Delk alleges that "TolTest performed extensive demolition on [her] project." Doc. 48 at 4.  Yet she

fails to allege any action on the part of TolTest that would constitute demolition as that term has been interpreted by Michigan courts.  As the Michigan Court of Appeals indicated,

> [T]he Occupational Code does not itself define the activities outlined in MCL 339.2401(b), [so] these terms must be accorded their plain and ordinary meanings." *Polkton Charter Twp. v. Pellegrom*, 265 Mich.App. 88, 102, 693 N.W.2d 170 (2005).  With respect to a building or structure, the term 'demolish' is commonly defined as to 'destroy' or 'ruin utterly.'  *See* Random House Webster's College Dictionary (1992), p 360.  'Wrecking' is similarly defined as the reduction of a building or structure to "ruin."  *Id.* at 1538, 693 N.W.2d 170.

*Serviclean One LLC v. Bricker*, No. 258903, 2006 Mich. App. LEXIS 2063 (Mich. Ct. App. 2006).  In *Serviclean*, a water and fire restoration provider was found not to have engaged in unlicensed demolition or wrecking when it removed damaged building materials from a homeowner's basement.  *Id.* at *7-8.  Here, as in *Serviceclean*, neither the record nor the parties' Agreement support the conclusion that TolTest's removal of contaminated drywall, plaster, paneling, ceiling tiles, and roof decking materials "equates to the level of destruction or ruin contemplated by the commonly understood meanings of these terms."  *Id.*  TolTest was not required to be licensed as a residential maintenance and alteration contractor to remove building materials from Ms. Delk's home.

As to the "erection, construction, replacement, repair, alteration, or an addition to [or] improvement" of a residential structure, Delk's motion for reconsideration, which like her previous briefs is written in scattershot style with selected words in bold font, again fails to specify which acts constitute those activities.  Doc. 123 at 24-25 (Br. at 15-16).  Delk provides a Dictionary.com definition for words like repair and alteration, but again focuses on "subtraction" of the ceiling from her premises rather than any repairs or additions.  There is a general dispute between the parties regarding who performed what work on the house, and such issues have not

8

been adequately presented in the pleadings before this Court at this juncture to the extent that the

Court could grant summary judgment either way.  Whether TolTest, Pioneer, or others performed

or were going to perform which work, and whether that work satisfied the types of work that

require licensing, is an issue for a finder of fact, because genuine issues remain.

With respect to the rebuilding and renovation work at issue, the Agreement does include

"renovations required to restore Ms. Delk's home following the removal by TolTest of mold

contaminated materials."  Doc. 109 at 28.  TolTest contends that it never intended to perform this

renovation work itself, but planned to hire licensed subcontractor Pioneer to perform such tasks.

*Id.*  Ms. Delk indicated that when she signed the Agreement, "there was no other builder

involved."  Doc. 95 at 14.  Even accepting that assertion as true, however, if TolTest engaged in

repair or alteration but not construction, it need not be licensed in Michigan if the work was

"contracted for, with, or hired entirely to be done and performed for the owner by a person" who

is licensed.  MCL 339.2401(b)(ii).  Thus, if construction work was done solely by Pioneer, who

was licensed, TolTest itself did not need to be licensed.  *Id.  See Horton v. Verhelle*, 588 N.W.2d

144 (Mich. Ct. App. 1998) (overruled on other grounds).

Although Ms. Delk acknowledges that Pioneer pulled permits for the roof construction on

her home, she alleges that the peaked roof was installed by both Pioneer and TolTest together.

Doc. 48 at 6.  She also points to deposition testimony of a Pioneer employee, Burton, who

expressed concern over pulling permits for work that Pioneer might not be undertaking entirely on

its own.   TolTest counters that Pioneer alone handled all renovation projects that were completed

before performance under the Agreement ceased.  Doc. 109 at 28.  Viewing the evidence in the

light most favorable to Ms. Delk, there remains a question of fact with respect to whether Pioneer

alone performed work that requires state licensure. *See Horton*, 588 N.W.2d 144. If this issue is resolved in Ms. Delk's favor at trial, both parties' contract claims could be dismissed, as the Agreement could be deemed invalid as a matter of law. *Stokes*, 649 N.W.2d at 378.

### B. The Competing Breach of Contract Claims

The Agreement contains a choice of law clause selecting Ohio law to govern its terms. Agreement at 7, ¶ 15. The Restatement (Second) of Conflict of Laws Section 187, and Ohio choice of law principles derived therefrom, favor upholding the chosen law of contracting parties. *Rose v. Phinney*, 2007 Ohio 5494, P24 (Ohio Ct. App. 2007) (citing *Foster v. Motorists Ins. Co.*, 2004 Ohio 1049, P13 (Ohio Ct. App. 2004); *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 209 (Ohio 2001)). Accordingly, Ohio law will govern interpretation of the Agreement and its terms. Ms. Delk will be entitled to judgment on the breach of contract claims if she can show either (1) that TolTest committed the first material breach under the Agreement, thereby excusing Ms. Delk's continued obligation to make payments, or (2) that any of the oral promises alleged by Ms. Delk could have given rise to a separate and distinct contract, rather than an attempted modification of the Agreement.

Ms. Delk makes a broad breach of contract claim that references several alleged wrongs committed by TolTest. The viability of her claims is severely limited by Ohio contract law. Paragraph 13 of the parties' Agreement contains both an integration clause and a no oral modifications clause:

> **13. Entire Agreement**. This Agreement and its attachments represent the entire understanding and Agreement between the parties hereto and supersedes any and all prior agreements, whether written or oral, that may exist between the parties regarding same. No terms, conditions, prior course of dealings, course of performance, usage of trade, understandings, purchase orders, or agreement purporting to modify, vary, supplement, or explain any provision of this Agreement

10

> shall be effective unless in writing, signed by representatives of both parties
> authorized to amendment this Agreement…

Agreement at 7, ¶ 13.  An integration clause included in a contract prohibits the Court from

considering any prior or contemporaneous oral or written terms that were not incorporated into the

final written contract.  *Worthington v. Speedway SuperAmerica LLC*, 2004 Ohio 5077, P17 (Ohio

Ct. App. 2004); *see also TRINOVA Corp. v. Pilkington Bros.*, 638 N.E.2d 572 (Ohio 1994);

*Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674 (Ohio Ct. App. 2000); *Burton, Inc. v. Durkee*,

109 N.E.2d 265 (Ohio 2952).  Consequently, this Court may not consider Ms. Delk's allegations

that TolTest orally consented, at or before the time of contracting, to terms not actually present in

the Agreement.  This includes the alleged promises to accept payment on a percentage of

completion basis and to finalize the remediation work within four months.  Doc. 95 at 27.

Similarly, the no oral modification clause prevents the Court's consideration of any

supposed subsequent modifications of the Agreement that were not reduced to writing and signed

by both parties.  *Rosepark Props. v. Buess*, 855 N.E.2d 140, 153 (Ohio Ct. App. 2006).  Although

Ohio courts recognize that "a written contract may be orally amended if the oral amendment has

the essential elements of a binding contract," including "new and distinct consideration" *Synergy*

*Mech. Contrs. v. Kirk Williams Co.*, 1998 Ohio App. LEXIS 6430, 18-19 (Ohio Ct. App. 1998)

(citing C*arrocce v. Shaffer*, 1997 Ohio App. LEXIS 4845 (Oct. 31, 1997); *Coldwell Banker*

*Residential Real Estate Serv. v. Sophista Homes, Inc.*, 1992 Ohio App. LEXIS 5474 (Oct. 26,

1992)), Ms. Delk has presented no evidence that a modification of the Agreement was supported

by new and distinct consideration.  Thus Ms. Delk's claims that TolTest promised to replace some

shutters, recommended Low Cost Home Improvement to install her roof, and promised to repair

damage it allegedly caused to her ceiling must be dismissed.  Her claim that TolTest violated an

oral agreement to fix the tarp it installed over her flat roof once it was exposed is properly dealt with as a matter of tort law and is discussed below.

Two of Ms. Delk's other assertions are also properly dismissed pursuant to the language of the Agreement.  Ms. Delk alleges that TolTest breached the Agreement by not stopping water intrusion into her home.  However, the Terms and Conditions section of the Agreement states in relevant part, "TolTest recommends that the water infiltration be defined and fixed….TolTest has observed potential water intrusion sources that will not be remedied in this scope of work." Agreement at 8.  She also alleges that TolTest improperly removed visible mold from surfaces in her home by sanding the mold, but the Agreement includes a term stating that "[v]isible mold growths will be removed from structures and finishes as required….This may include scraping and sanding to remove visible mold."  Agreement at 13, Attachment A.  Since Ms. Delk agreed to both contract provisions by signing the Agreement, she cannot now claim that such conduct violates the Agreement.

Ms. Delk has surviving contract claims that, if the Agreement is found to be valid, TolTest committed the first material breach of that agreement and thus excused her  from making further payments.  A breach that is material violates a term essential to the purpose of the contract. *Hanna v. Groom*, 2008 Ohio 765, P16 (Ohio Ct. App. 2008).  Moreover, "a material breach by one party relieves the other of its obligation to perform under a contract."  *First Energy Solutions v. Gene B. Glick Co.*, 2007 Ohio 7044, P35 (Ohio Ct. App. 2007) (citing *Lakes v. Mayo*, 12th Dist. No. CA-2006-01-003, 2006 Ohio 6072, at P7; Oakes v. P.J. Bordner & Co. (Apr. 18, 1994), 5th Dist. No. CA 9488, 1994 Ohio App. LEXIS 2221, at *9; Tucker v. Young, 4th Dist. No. 04CA10, 2006 Ohio 1126, at P25).  Thus, if TolTest acted in a way that frustrated the material purpose of

12

the Agreement – mold remediation of Ms. Delk's home – prior to her refusal to pay TolTest's invoices, her refusal would be excused by their material breach.

Ms. Delk claims that TolTest materially breached the parties' Agreement in several ways. She argues that TolTest did not perform certain agreed-upon tasks correctly, which frustrated the essential purpose of the Agreement.  Some of these tasks could not have constituted the first material breach, as they occurred after her refusal to pay invoiced amounts.  These include TolTest's suspension of performance on the job, which the parties agree occurred in March of 2003.  Other actions by TolTest may be considered first material breaches, including removal of the flat roof in January of 2003, and the Township's issuance of a stop work order in late January of 2003.  For TolTest to have committed the first material breach, its action violating the Agreement would have to have occurred prior to Delk's refusal to pay the invoice sent in December, 2002.  That date may be January 16, 2003, thirty days after the first unpaid invoice was sent to Ms. Delk.

Actions Ms. Delk alleges that could have resulted in such material breach if they occurred in some significant combination were not installing roof flashing as required on page 3 of the Agreement; not drying the home or removing visible mold as required in Attachment A to the Agreement; not setting up containment barriers or negative air pressure as required in Attachment A; and causing code violations and not pulling the proper city permits as required in Attachment A.  In addition, Ms. Delk alleges that TolTest violated its promise to perform all work "in accordance with generally accepted industry standards," Agreement at 6, prior to her refusal to pay, because TolTest removed gutters without replacing them and thereby exposed untreated walls to the elements; caused additional damage to the house and contents; and did not install shingles

13

according to the manufacturer's instructions.  Most importantly, she alleges that there were significant quality issues with the peaked roof installed by Pioneer and TolTest that caused moisture to enter her home and exacerbate the mold problem.  Still, "[a] breach of a portion of the terms of a contract does not discharge the obligations of the parties to the contract, unless performance of those terms is essential to the purpose of the agreement." *Hanna v. Groom*, 2008 Ohio 765, P16 (Ohio Ct. App. 2008) (citation omitted).  Alone or in combination, some of these alleged missteps must  have frustrated the purpose of the agreement in order to excuse Ms. Delk's nonpayment.

There is a genuine issue of material fact with respect to the first material breach which this Court cannot resolve on the pleadings currently before it.  Ms. Delk ceased making payments under the contract after the December 16, 2002 invoice.  TolTest agrees that there was a small "deficiency" with the peaked roof, Doc. 109 at 12, but argues that the retainage amount in the Agreement would have sufficiently covered correcting the problem.  Doc. 89 at 12.  Thus, there is a genuine issue of material fact as to whether TolTest and its subcontractor substantially performed their contractual obligation to remove mold from Ms. Delk's property, thereby making her refusal to pay the first material breach, or whether TolTest was the first party to materially breach the Agreement.  If the Agreement is found to be valid by a trier of fact, judgment could be granted with respect to all of Ms. Delk's contract claims (notwithstanding the claim of first material breach for actions occurring prior to December 16, 2002).

## C.     Common Law Tort Claims

### 1.      Negligence and Nuisance

Ms. Delk's first tort claim includes several allegations of negligence in performing the remediation work on her home.  Negligence causing injury to property is governed by Restatement section § 147, which provides:

> In an action for an injury to land or other tangible thing, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence, the thing and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 147.  The alleged injury to Ms. Delk's property occurred in Michigan, as did the alleged actions that brought about the injury.  Michigan law will apply to the common law tort claims.

With respect to the negligence claim, Ms. Delk claims TolTest owed her several legal duties that it purportedly breached.  She first alleges that TolTest breached a duty to perform in a workman-like manner.  She then lists several duties that can be combined to say that TolTest owed her a duty not to act affirmatively to worsen her position or the condition of her home.

Ms. Delk's claim of duty to perform in a workman-like manner is properly dealt with as a matter of contract law.  As Michigan courts have held, there generally must be some duty distinct from the contract duty to allow a party to a contract to proceed with a negligence action. *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 657 (Mich. 1997) (citing *Hart v. Ludwig*, 79 N.W.2d 895 (Mich. 1956)).

> [In] those cases where misfeasance on a contract was found to support an action in tort … a situation of peril [was] created, with respect to which a tort action would lie without having recourse to the contract itself.  Machinery [was] set in motion and life or property [was] endangered….In such cases . . . we have a 'breach of duty distinct from . . . contract.'  Or, as  Prosser puts it . . . 'if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not.'

15

*Id.* at 658.  If a trier of fact were to find that the parties' Agreement was invalid per TolTest's unlicensed construction work, the tort allegations in this case may survive.  If not, however, they may not because it is likely that no duty of performance exists independent of the Agreement.

Additionally, even if TolTest did not owe any other cognizable duty to Ms. Delk outside of the contract, it did owe her a duty of care with respect to the tarp it placed over her flat roof once it was exposed to the elements.  There is a genuine issue of material fact surrounding the circumstances that led to the tarp being placed on the roof and later caving in, exposing Ms. Delk's home to renewed moisture.  Generally, there is no duty to rescue others from foreseeable harm.  However, TolTest was arguably responsible for creating the risk of harm to Ms. Delk's property by removing her roof in the middle of winter and exposing her home to a renewed moisture source.  Having created the peril to Ms. Delk's home, TolTest had a duty to remedy it. *See Papalas v. Ford Motor Co.*, 2005 Mich. App. LEXIS 2760 (Mich. Ct. App. 2005).  Moreover, TolTest voluntarily undertook to remedy the situation by placing a tarp over the exposed roof. Once one voluntarily undertakes to rescue another from harm, he must do so with reasonable care. *See Conant v. State Farm Fire & Cas. Co.*, 2006 Mich. App. LEXIS 1727 (Mich. Ct. App. 2006); *Martel v. J.M. Olson Co.*, 2005 Mich. App. LEXIS 3217 (Mich. Ct. App. 2005).  Summary judgment is not appropriate with respect to Ms. Delk's negligent maintenance of her roof claim.

### 2.    Fraud and Silent Fraud

According to Section 148 of the Restatement (Second) of Conflict of Laws, Michigan law will apply to Ms. Delk's fraud and silent fraud claims.  Although Ms. Delk points to several misstatements and omissions that she claims amount to fraud, she has failed to plead with the

16

requisite particularity the elements of a fraud claim, including her reliance on the particular statements and omissions she claims were false and how that reliance led to her detriment.

### D.      The TolTest and State Farm Relational Tort Claims

Ms. Delk's relational tort claims are assumed to be made in the alternative, as they are essentially mutually exclusive.

#### 1.      Civil Conspiracy

Joint torts are governed by Section 172 of the Restatement (Second) of Conflict of Laws, which usually points to the "local law of the state where the injury occurred." *Id.* There is no compelling reason in this case to choose the law of Ohio over the law of Michigan, where the injury occurred. Ms. Delk avers that TolTest conspired with her insurance company, State Farm, to commit fraud and take financial advantage of her. Ms. Delk has presented no verifiable evidence that TolTest conspired with State Farm to cause her harm. Summary judgment is properly granted.

#### 2.      Intentional Interference with Contract & Advantageous Relationship

Under the conflicts provision for the analogous tort of interference with a marriage relationship, the "local law of the state where the conduct complained of principally occurred" will typically govern. Restatement (Second) of Conflict of Laws § 154. Here, that state is Michigan and there is no compelling reason to choose the law of Ohio instead.

Ms. Delk has presented no verifiable evidence that TolTest deliberately interfered with her relationship with her insurance company. Summary judgment is properly granted.

### E.      The Statutory Claims

17

Ms. Delk claims protection from TolTest's alleged misconduct under the consumer protection laws of both Michigan and Ohio.  She alleges that TolTest's behavior during the mold remediation process was violative of Michigan's Consumer Protection Act (MCL § 445.902) and Ohio's Consumer Sales Practices Act (ORC § 1345.01).

The MCPA makes unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ."  MCL § 445.903(1).  Delk lists a number of allegations that, if proven true, would support her claim of violation of the MCPA by TolTest.  The central allegations revolve around the issue of TolTest's licensure.  If it can be shown that TolTest, as discussed above, required a license to perform the work that it can be proven to have performed, and that TolTest told Delk that it had the required licensing, then a violation of the MCPA can be established.  Such fact, if proven, could establish that TolTest caused a probability of confusion or misunderstanding as to the certification of its services; that TolTest claimed to have approval which it did not actually have; caused confusion as to rights or remedies;  failed to reveal a material fact, the omission of which tended to mislead or deceive; and other violations of the MCPA.  There are other allegations under the MCPA which, if the underlying facts are proven, could establish other violations of the MCPA.  TolTest has not put forth sufficient evidence to gain summary judgment on these claims.

Although TolTest claims that the Ohio Act does not apply to out-of-state consumers, it is incorrect in this assertion.  "The OCSPA applies to the actions of suppliers in Ohio, even if the ultimate subject of the transaction is located outside the state and even if the supplier itself is based outside the state."  *Detrick v. 84 Lumber Co.*, 2007 U.S. Dist. LEXIS 35517 (N.D. Ohio 2007) (citing *Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333, 339 (N.D. Ohio 1991);

18

*Arnold v. Volkswagen of America, Inc.*, 2005-Ohio-1710 P30, 2005 Ohio App. LEXIS 1644 (Ohio

Ct. App. Apr. 8, 2005); *Brown v. Market Development, Inc.*, 41 Ohio Misc. 57, 60, 322 N.E.2d

367, 369 (Ohio Com. Pl. 1974)).  Ms. Delk claims over 48  instances of violation of the OCSPA in

her amended counter-complaint (Doc. 48 at 32-34), and at least ten instances in her brief (Doc. 95

at 30-32).  TolTest, although moving for summary judgment on these claims, rested on its

argument that the OCSPA was inapplicable, an argument which the Court rejects as stated above.

In the alternative, TolTest points to the Lint affidavit, without citing what portions of it support

judgment against which of Delk's allegations. As stated above, TolTest as movant bears the initial

responsibility of "informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact."  *Celotex Corp.*, 477 U.S. at 323.  TolTest has not met its burden by broadly

pointing the Court to the nineteen-page affidavit of its employee.

### F.    Punitive Damages

Michigan law does not generally allow punitive damages.  In fact, "punitive damages are

available in Michigan *only* when expressly authorized by the Legislature." *Gilbert v.*

*DaimlerChrysler Corp.*, 685 N.W.2d 391, 400 (Mich. 2004) (emphasis in original).  Ms. Delk has

shown no statute that would entitle her to punitive damages under Michigan law.

Under Ohio law, while punitive damages are generally not available for claims which are

exclusively contract claims, they may be awarded if "the conduct underlying the contract claim is also

a tort for which punitive damages are recoverable." *In re: Graham Square, Inc.*, 126 F.3d 823,

828 (6th Cir. 1997); *Koehler v. PepsiAmericas, Inc.*, 2008 WL 628925, 183 L.R.R.M. (BNA) (6th

Cir. 2008). The Court, as discussed above, denies summary judgment to Delk's tort claim of negligence and nuisance, and those potential torts are to be governed by Michigan law. Under Michigan law, these are not torts for which punitive damages are available, because punitive damages are not available for torts under Michigan law without statutory authorization, and Delk has failed to show such statutory support. Therefore, punitive damages are not recoverable under either Ohio or Michigan contract law.

### G. TolTest's Claims

In addition to requesting summary judgment on all of the issues raised in Ms. Delk's counter-claim, TolTest seeks summary judgment on its claims against Ms. Delk. It alleges that she committed the first material breach of the parties' Agreement by failing to pay, which excused TolTest's continued performance.

TolTest also alleges unjust enrichment and quantum meruit for the work it performed before it suspended performance on the project. Although the caselaw is divided, under Michigan law, an unlicensed contractor that performs work that requires a license cannot succeed in contract or in equity unless he can show that he earned "wages for personal labor," which are statutorily excluded from the licensing requirement. *Utica Equip. Co. v. Ray W Mallow Co.*, 516 N.W.2d 99, 101 (Mich. Ct. App. 1994); MCL 339.2401(a). Until the issues of material breach and licensing are factually resolved, summary judgment on TolTest's claims is improper. In other words, the unjust enrichment and quantum meruit claims are closely related to the contract claims and need not be decided in the absence of a finding of fact with regard to the licensing and performance issue, which affects the validity of the contract. Therefore, the Court cannot grant summary judgment for TolTest on TolTest's claims at this juncture.

20

**IV.     Other Motions**

TolTest has filed objections to Delk's affidavit (Doc. 113).  Delk has filed  motions to strike Wayne Lint's affidavit (Doc. 116) and TolTest's reply brief and affirmative defenses (Doc. 117) and to supplement Delk's affidavit and strike objections thereto (Doc. 118).  The Court, having reviewed these objections, finds that these motions are moot in light of this memorandum opinion.  The Court notes TolTest's objections, but they do not present an actionable motion and so cannot be granted.  Delk's objections are likewise duly noted, but denied as moot because, even considering the arguments contained therein, the substance and findings of this opinion would not be affected in any substantial way.  The Court finds the motion to strike TolTest's brief and affirmative defenses to be misplaced.  Even if TolTest's arguments were, as Delk alleges, improperly plead,  many of the arguments made by TolTest would need to be addressed by the Court in light of Delk's counter-claims, without regard to when or even whether they were raised by TolTest.  Finally, in light of the Court's refusal to grant TolTest's objections and Delk's motions, the defendant's motion to supplement and strike is also moot, but like the other filings, duly noted.  In any case, another result on these motions would not affect the substance of this Court's opinion.

**V.     Conclusion**

For the reasons stated herein, the plaintiff's motion is granted in part, and denied in part (Doc. 89).  Summary judgment with regard to Counts 5, 6, 7, 9, and 10 of the defendant's counter complaint is hereby granted in favor of TolTest.  Summary judgment with respect to Counts 1, 2, 3, 4, and 8 of the counter-complaint is hereby denied.  Plaintiff's motion for summary judgment is denied with regard to the plaintiff's claims against the defendant.  Plaintiff's objection to the

21

defendant's affidavit is duly noted (Doc. 113).  Defendant's motion to strike the Lint affidavit

(Doc. 116), to strike TolTest's affirmative defenses (Doc. 117), and to supplement Delk's affidavit

and strike TolTest's objections (Doc. 118)) are hereby denied.  Defendant Delk's motion for

reconsideration is hereby granted in part and denied in part, consistent with this opinion (Doc.

123).

       IT IS SO ORDERED.

                               _ s/ *David A. Katz*_____
                               DAVID A. KATZ
                               U. S. DISTRICT JUDGE